Ida Mae MITCHELL, Appellant,

v.

ALLIED CAB COMPANY, a corporation, Appellee.

Forrest MITCHELL and American Fidelity Fire Insurance Company, Appellants,

v.

ALLIED CAB COMPANY, a corporation, Appellee.

Nos. 1981, 1982.

Municipal Court of Appeals for the District of Columbia.

Submitted May 6, 1957.

Decided June 24, 1957.

Edward J. Skeens, Washington, D. C., and Leo Michael Linehan, for appellants.

J. Lawrence Hall, Washington, D. C., for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

QUINN, Associate Judge.

Ida Mae Mitchell sued Allied Cab Company for personal injuries sustained in an automobile collision at an intersection. Her husband filed a separate suit for property

damage and personal injuries, in which his insurance carrier joined as subrogee under a deductible policy. These cases were consolidated for jury trial. At the conclusion of all the evidence Allied moved for a directed verdict,[1] which was denied as to the Mitchells but granted as to the insurance company, on the ground that it had failed to sustain the burden of proof of showing that the amount allegedly paid by it was rendered necessary by the collision. The jury returned a verdict for $1,500 in favor of Mrs. Mitchell and awarded her husband $500. Thereupon, Allied moved for judgment *non obstante veredicto* and also moved for a new trial. The trial court held in effect that Mrs. Mitchell was guilty of contributory negligence as a matter of law on the authority of Brown v. Clancy, 1945, D.C.Mun.App., 43 A.2d 296, and consequently granted Allied's motion for judgment, and also granted the motion for a new trial in the event that its decision on the motion for judgment be reversed on appeal. These appeals followed.

The facts are these: On May 7, 1954, late in the afternoon, the Mitchells, accompanied by a friend, left Charleston, South Carolina, for New York State, planning to take turns driving. At the time of the collision, which happened at approximately 5:55 A.M. the next morning, Mrs. Mitchell was driving, the woman passenger was on the front seat with her, and Mr. Mitchell was asleep in the rear. The weather was clear and the road surface dry. Mrs. Mitchell testified that she had never driven in the District of Columbia before; that she was traveling north on First Street, N. W., near the intersection of Louisiana Avenue when she realized she had made a wrong turn, and that she was endeavoring to get back on the proper route when she noticed a flashing red signal,[2] which she later ascertained was located at the corner of Louisiana Avenue at First Street; that she stopped her car about four feet from the south curb line preparatory to making a right turn and had an unobstructed view to her left "well enough to see a vehicle approaching that corner." The passenger also had a view for an even greater distance and she testified that she could see for "about a block, maybe, or a block and a half." Both testified that they saw no vehicle traveling northeast on Louisiana Avenue, the favored street, and therefore did not see the taxicab until after the collision. The only evidence of any explanation of the collision by Mrs. Mitchell was "The first thing jumped in my mind was a plane, because it sounded as if it had showered over the top." " * * * it sounded like it had hit the top of the car." According to her testimony she had just started to turn on Louisiana Avenue and had traveled but a very few feet when the collision occurred, the taxicab hitting the left rear and side of her automobile.

The taxicab driver's testimony was that he was traveling about 25 miles per hour in a northeasterly direction on Louisiana Avenue, which was controlled by a flashing yellow light,[3] when he saw the Mitchell vehicle as it was about to enter the intersection; in his opinion it was traveling 30 miles per hour; that at that time his automobile was in the crosswalk of Louisiana

1. Municipal Court Civil Rule 50(b).

2. The Traffic and Motor Vehicle Regulations for the District of Columbia, Part I, Section 13(a), provide: *"Flashing red (stop signal).*—When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign."

Section 48 provides: "At any point at which an official 'Stop' sign has been erected, all vehicles shall come to a complete stop and shall yield to other vehicles within the intersection or approaching so closely thereto as to constitute an immediate hazard, * * * ."

3. Section 13(b) provides: *"Flashing yellow (caution signal).*—When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution."

Avenue; that he applied his brakes but could not avoid the collision; that after the accident he asked Mrs. Mitchell why she had not stopped and she told him the green light was in her favor. A police officer who arrived on the scene shortly after the collision testified that Mrs Mitchell told him that the light was green. When asked whether he considered the accident a slight or a major collision, the officer stated that it was a "heavy collision."

The only question for us to determine is whether the trial court was correct in finding contributory negligence as a matter of law. We have time and again held that negligence and contributory negligence are ordinarily fact questions, but we have also held that where the facts clearly appear from the undisputed evidence to be such that, conceding every legitimate inference, but one reasonable conclusion may be drawn, the issue becomes one of law for the court.[4] There was no evidence that Mrs. Mitchell's view of the street to her left was obstructed. Both she and her passenger said they looked and saw no vehicle, yet traveled a very short distance and were struck. It is elementary that a person operating a car who arrives at an intersection controlled by a stop signal must not only look before entering the favored street, but also observe moving traffic and give the right-of-way to an approaching vehicle which would constitute an immediate hazard. In other words, a driver must not merely look but is charged with the responsibility of seeing what is there to be seen, and if he fails in this regard, then the law imposes a penalty for his lack of observation, declares him contributorily negligent, and prohibits recovery.[5] Mrs. Mitchell and her witness conceded that from the position of the taxicab after the collision it must have been traveling on Louisiana Avenue in a northeasterly direction, yet they both testified they looked and saw nothing. A review of the stenographic transcript discloses no doubt that the taxi-

cab was so close that if they had looked observantly they would have seen it, and we therefore hold in this case that the court was justified in finding contributory negligence as a matter of law.

In view of our holding, it is unnecessary for us to rule on the other assignments of error.

Affirmed.

---

4. Brown v. Clancy, 1945, D.C.Mun.App., 43 A.2d 296, 297.

5. Id. 43 A.2d at page 298.