Le Roy E. MUELLER and Lucille Mueller,
Plaintiffs-Appellants,

v.

CITIES SERVICE OIL COMPANY, a corporation, Defendant-Appellee.

No. 14360.

United States Court of Appeals
Seventh Circuit.

Nov. 20, 1964.

Rehearing Denied Jan. 14, 1965.

**304**

James A. Dooley, Clare J. Murphy, Chicago, Ill., for plaintiffs-appellants.

Charles M. Rush, David Jacker, John M. O'Connor, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiffs, Le Roy E. Mueller and his wife Lucille Mueller, residents of Illinois, brought suit against defendant Cities Service Oil Company, a Delaware corporation, to recover damages arising out of a collision between an automobile driven by Le Roy Mueller and a truck driven by Porter C. Arneson.

A jury trial resulted in a verdict and judgment for defendant. Plaintiffs appealed.

The accident occurred on December 8, 1960 at a rural intersection of two gravel roads in Kendall County, Illinois. Arneson was killed as a result of the collision.

Plaintiffs alleged in their complaint, *inter alia,* that Arneson was the agent and servant of defendant, Arneson was negligent and such negligence was the proximate cause of the accident and resulting injuries to Le Roy Mueller. Le Roy Mueller sought $75,000 for his injuries and Lucille Mueller $25,000 for loss of services and consortium.

Defendant defended on the grounds that Arneson was an independent contractor and not an agent or servant of defendant, Arneson was not negligent and Le Roy Mueller was guilty of contributory negligence which proximately caused the accident.

The trial court submitted the issues of agency, negligence and contributory negligence to the jury. The jury returned a general verdict in favor of defendant. No interrogatories were submitted to the jury.

On appeal, plaintiffs contend the trial court erred in submitting the question of agency to the jury, in rulings on the admissibility of evidence and in instructing the jury. Plaintiffs further contend they were denied a fair trial.

The Illinois Supreme Court in Darner v. Colby, 375 Ill. 558, 31 N.E.2d 950 (1941) set out the Illinois law applicable in determining whether a person is an independent contractor or an agent.

" * * * [The status] depends upon the contract between the parties and their relationship as shown by the evidence. Each case must depend upon its own facts. Generally no one feature of the relation is determinative but all must be construed together.

\* \* \* \* \* \*

"An independent contractor is one who renders service in accordance with the will of the person for whom the work is done, only as to the result of the work and not as to the means by which it is accomplished. * * * Where one undertakes to produce a given result without being in any way controlled as to the method by which he attains

it, he is considered an independent contractor rather than an employee. * * * Where the one employed to do the work, in the course of which the injury occurs, is free to exercise his own judgment and discretion as to the means and appliances which he may see proper to employ in so doing, entirely exclusive of the control and direction of the party for whom the work is being done, he is deemed in law an independent contractor. * * * The right to control the manner of doing the work is of principal importance in the consideration of the question whether the worker is an employee or an independent contractor. * * * The test is in the right to control and not the fact of whether actual interference with the method of doing the work is shown by the evidence. If the person for whom the work is being done retains the right to control the manner in which the work is to be done, the relation of employer and employee exists. * * *" (Citations omitted.) Id. at 560–561, 31 N.E.2d at 951–952.

The contract in the instant case stated that defendant was "engaged in the refining and marketing of gasolenes, oils, greases and other petroleum products, and the marketing of automotive accessories." Arneson, designated throughout the contract as "consignee," was "in possession of a bulk station * * * suitable for the receipt, storage and distribution of such products to customers for resale or consumption."

Defendant agreed:

"1. To deliver to CONSIGNEE, freight prepaid, * * * [products and accessories].

"2. To pay all ad valorem taxes, * * * excise taxes, * * * sales * * * [taxes] * * * and income taxes * * * levied upon the proceeds of the sales of consigned products.

"3. * * * [T]o pay to CONSIGNEE a portion of the net proceeds from the sale of consigned products * * *.

"4. To facilitate the sale of products of CITIES consigned to CONSIGNEE, and for the mutual benefit of the parties, * * * [to] advise and assist CONSIGNEE in his sale of the products consigned to him * * *. In that connection CITIES has furnished and may hereafter, at its option, furnish certain equipment for installation at service station and consumer premises. * *

* * * [Such equipment was to remain the property of defendant and Arneson was to make ordinary repairs at his own expense.]"

Arneson agreed:

"1. * * * [To] receive * * his entire requirements of petroleum products and automobile accessories as CITIES may from time to time elect to furnish * * * and that title thereto shall remain in CITIES until sold by him [Arneson] * *.

"2. To sell said products for cash, or credit properly authorized in writing by CITIES' Regional Credit Manager, and at prices authorized by CITIES, to customers selected by him and to retailers or consumers of CITIES' products, to the end that CITIES' present and future contractual obligations to such retailers and consumers shall be fully satisfied.

"3. That any checks or drafts or other forms of remittances shall be endorsed by CONSIGNEE for deposit to the credit of CITIES with full recourse against CONSIGNEE if same is not finally paid.

"4. To report to CITIES and account for all property, (including equipment, supplies, and products) intrusted to his possession, as well as for all sales made, and for the proceeds thereof.

"5. To indemnify and hold CITIES harmless from and against any loss, cost or expense arising out of * * * any claim of damage to

property or injury to person, including death, occasioned by the operation of his business, and to carry Public Liability and Property Damage insurance, on all trucks and cars used in his business, such insurance to be in such amounts and on such form of policy and with such company or companies as shall be acceptable to CITIES.

"6. To pay all occupation, license or privilege taxes, except such as are measured by or levied upon the proceeds of the sale of consigned products.

"7. To furnish a bond to guarantee faithful performance of CONSIGNEE'S obligations under the terms and provisions of this contract, in such amount and on such form as may be satisfactory to CITIES.

"8. From time to time and upon request of CITIES, to cooperate in measurements and audits of stocks consigned to him and to execute receipts and acknowledgments showing commodities on hand and quantities thereof. * * *

"9. That the quantity of gasolene (and other liquids in bulk), delivered to said Station by tank car or otherwise, shall be accepted by CONSIGNEE as that specified in the bill of lading or memoranda of shipment * * *.

"10. Not to use the name 'CITIES SERVICE OIL COMPANY' as a trade name, nor by the use of advertising or otherwise hold himself out to the public as an agent or employee of CITIES, and CONSIGNEE agrees to exhibit on the premises signs of sufficient prominence and wording to advise the public that the business there conducted is owned, operated and maintained solely by CONSIGNEE; but CONSIGNEE is hereby authorized to designate himself to be a consignee of Cities Service products and to use the distinctive Cities Service devices and color schemes in connection therewith.

"11. To bear all expense incident to the conduct of his business and at his own expense furnish trucks and other equipment which he may require, except truck tanks which CITIES may, at its option, agree to furnish.

"12. At his own expense, to hire and pay the wages of all assistants and employees he may deem necessary for the operation of his business and assume full direction and control over and responsibility for them. CONSIGNEE shall not employ anyone in the name of CITIES.

"13. To accept full and exclusive liability for the payment of any and all premiums, contributions and taxes for Workmen's Compensation Insurance, Unemployment Insurance, Income Taxes and Old-age Pensions now or hereafter imposed by or pursuant to federal or state laws, which are measured by the salaries or other remunerations paid to persons employed by him; and CONSIGNEE agrees to indemnify and hold CITIES harmless against any such liability which may be assessed against CITIES. CONSIGNEE agrees that he will comply with all laws, regulations, and orders of duly constituted state and federal authorities in respect to employment."

The evidence at the trial indicated the terms of the contract were complied with by both parties.

The evidence further showed defendant paid expenses incurred in maintaining the bulk plant and paid the costs of delivery of its products to the bulk plant. Defendant did not withhold income tax or contribute social security on any payments to Arneson. Arneson and his wife filed joint income tax returns for the oil business. Arneson paid the entire social security tax. Arneson worked only when he wanted to and went hunting and fishing whenever he chose. Arneson owned the truck involved in the accident and paid the expenses of operating it. Arne-

son bought tires, batteries and accessories from defendant and resold them to his customers at prices determined by him.

Plaintiffs rely on Darner v. Colby, supra, and contend that Arneson was an agent or employee of defendant as a matter of law. However, the facts in Darner are materially different from the instant case.

In Darner, the contract was designated "Conditions of Employment," and the word "employment" was used in the contract rather than the word "consignee" as in the present case. Id. at 561–562, 31 N.E.2d at 952. In Darner, the tank-truck owner was "required to devote his entire time and attention to his employment and to operate at least one truck every day except Sunday, or to hire a substitute." Id. at 563, 31 N.E.2d at 952. There, the tank-truck owner was under the supervision of a divisional manager for the company and "whenever a violation of the regulations of the company as to the manner of conducting the business occurred, it was his [divisional manager] business to call the matter to * * * [the tank-truck owner's] attention." Id. at 563, 31 N.E.2d at 953.

■ While the designation in the contract of tank-truck owners as, e. g., "consignee," or "employee" is not binding on the court, it is a factor to be considered. See Hartley v. Red Ball Transit Co., 344 Ill. 534, 540–541, 176 N.E. 751 (1931). The fact that defendant in this case did not withhold or pay income or social security taxes on Arneson is also a fact to be considered. Westlund v. Kewanee Public Service Company, 11 Ill.App.2d 10, 24, 136 N.E.2d 263, 270 (1956).

■ Upon careful examination of the facts in the instant case, we are convinced there was sufficient evidence indicating that Arneson was an independent contractor to justify the district court's refusal of plaintiffs' request to instruct the jury as a matter of law that Arneson was an agent of defendant.

■ Plaintiffs contend they were denied a fair trial because of the presence of Mrs. Arneson in the courtroom throughout the trial. We disagree. Mrs. Arneson worked with her husband in connection with his agreement with defendant and took over his business after he was killed. She had knowledge of the relationship between Arneson and defendant and was properly designated by defendant to be its representative in the courtroom.

■ Plaintiffs assert the jury was prejudiced when defendant asked Mrs. Arneson, while she was testifying as a defense witness, "Do you have litigation pending in the State court in which you are plaintiff suing Mr. Mueller on behalf of the estate of your deceased husband?" Plaintiffs objected before Mrs. Arneson could answer. The objection was sustained and the jury instructed to disregard the question. In this context, we hold the question asked did not prejudice the jury against plaintiffs.

■ Plaintiffs argue the district court erred in denying a mistrial on the ground that they were prejudiced because Mrs. Arneson became emotional in the presence of the jury. The district court, out of the presence of the jury, stated, "I would not characterize what happened on the witness stand as a breaking down. She uttered no sound. She answered all questions put to her. I don't think she broke down." The district court observed the witness and we accept its finding on this point.

■■ We find no merit in plaintiffs' assertions of prejudicial error by the district court's refusal to instruct the jury that one of plaintiffs' attorneys had to withdraw from the case due to circumstances beyond his control and its failure to exclude defense witnesses from the courtroom. It appears from the record that plaintiffs made no motion to exclude witnesses until after all plaintiffs' witnesses had testified. We find no abuse of discretion by the district court in denying this motion and refusing to give such an instruction.

Plaintiffs also urge the district court committed prejudicial and reversible error in rulings on evidence.

Plaintiffs argue an expert witness of defendant invaded the province of the jury by being permitted to answer hypothetical questions concerning stopping distance and comparative speed of two colliding vehicles of different weights based upon their angle of deflection.

Defendant's expert witness was asked, "On a dry day, what would the distance required be for a 1958 Cadillac with power brakes traveling at a speed of 20 miles an hour—in other words, how many feet would it take to stop that car at that speed from the time the brakes were applied until the car came to a stop?"

Plaintiffs objected that the hypothetical question made "no showing of the type of gravel, the size of the gravel, the looseness of the gravel, the compactness of the gravel, the climatic conditions, [and] weather conditions." We find no error in the overruling of this objection. Prior to being asked this question, the expert witness was shown a photograph of the road at the scene of the accident. The witness testified the road was what "is generally spoken of as a graded and compacted gravel surfaced road."

Plaintiffs argue that the witness's answer ("After the brakes have locked the wheels, it would require about 27 feet to bring the vehicle to a stop.") to this question decided the issue of negligence for the jury since plaintiff testified he was fifty to sixty feet from the intersection when he first saw defendant's truck. We disagree. It does not invade the province of the jury to apprise it of facts or opinions, not within the knowledge of men of ordinary experience, which, if believed, will be the basis for the jury's decision on an issue. See Clifford-Jacobs Forging Co. v. Industrial

Com'n, 19 Ill.2d 236, 242–244, 166 N.E. 2d 582, 586–587 (1960).

This expert witness was further asked, "[A]ssume in the last setup that you had there that the vehicle that is in the horizontal weighed about 13,500 pounds and the vehicle in the verticle weighed about 4,700 pounds, and they deflected in a 45 degree angle after impact; what would that mean as to the speed of this vehicle?" [1]

Objection was made and overruled and the witness answered, " * * * The speeds of the two vehicles would, as we say, be inversely proportionate to the weights. In other words, the weight of the truck was about 2½ times roughly the weight of the car. Then to deflect each other equally, the car would have to have about two and a half times the speed of the truck."

Plaintiffs urge that the undisputed evidence in the record shows the truck was going forty-five to fifty miles per hour and plaintiffs' vehicle twenty-five to thirty miles per hour and the hypothetical question must be based on these facts. We hold that where plaintiff is the only eyewitness to the accident, expert testimony of this nature is proper. See Lofton v. Agee, 8 Cir., 303 F.2d 287 (1962) and Campbell v. Clark, 10 Cir., 283 F.2d 766 (1960).

We find no merit in plaintiffs' contentions that the district court committed reversible error in its rulings on cross-examination and redirect examination of plaintiffs' witness Sheriff Willman.

Finally, plaintiffs assert the district court erred in instructing the jury concerning the definition of independent contractor. We have examined the instruction and find it to be a proper definition of the term as it is defined by the Illinois courts.

We have considered all contentions of plaintiffs and hold none constitutes re-

---

1. As best we can determine from the record, in using the words "horizontal" and "vertical" in this question, reference was being made either to a diagram exhibited to the witness or to some portion of prior testimony.

versible error and that plaintiffs were given a fair trial of their case.

The judgment appealed from is affirmed.

Affirmed.