**Florence SPAIN et al., Appellants,**

**v.**

**James L. McNEAL et al., Appellees.**

**No. 5934.**

District of Columbia Court of Appeals.

Argued May 7, 1973.

Decided May 7, 1975.

Rehearing Denied May 29, 1975.

Isadore B. Katz and Jules Fink, Silver Spring, Md., for appellants.

Raymond A. Yost, Washington, D.C., with whom Robert E. Anderson, Washington, D.C., was on the brief, for appellees.

Before REILLY, Chief Judge, and FICKLING and HARRIS, Associate Judges.

HARRIS, Associate Judge:

This case arose from an intersectional collision between automobiles driven by James E. McNeal and Lester Spain. McNeal's parents and their insurance carrier sued Spain (and his wife, Florence) for property damage. The Spains counterclaimed, seeking compensation for property damage and for the severe personal injuries experienced by Spain. A jury returned a verdict for Lester Spain in the amount of $94,561, and awarded an additional $2,500 to Mrs. Spain. The McNeals moved alternatively for a judgment notwithstanding the verdict or a new trial. Super.Ct.Civ.R. 50(b). The trial court ruled that Spain was contributorily negligent as a matter of law, and granted the motion for a judgment notwithstanding the verdict. That portion of the motion which requested a new trial was not ruled upon. We reverse and remand.

## I

In resolving an appeal from the granting of a motion for judgment notwithstanding a verdict, we must consider the evidence in the light most favorable to appellants. *See* Singer v. Doyle, D.C.App.,

236 A.2d 436, 438 (1967); Sims v. East Washington Railway Co., D.C.App., 222 A.2d 641, 642 (1966). The principal issue before us is whether, viewed from such a perspective, the evidence did establish that Spain was contributorily negligent as a matter of law. *See* Rawlings v. Robbins, D.C.App., 257 A.2d 486, 488 (1969); Eclov v. Dalton, D.C.Mun.App., 38 A.2d 661, 662–63 (1944).

The collision occurred early on an evening in June. The weather was clear, and it was still daylight. Spain was driving south on 16th Street, N.E.; McNeal was traveling west on East Capitol Street. The intersection of those two streets was controlled by a stop sign on 16th Street, set back some 18 to 20 feet from the intersection. Spain stopped at the stop sign, and looked both left and right. Cars parked legally along East Capitol Street obstructed his view, so he drove forward to about the curb line, and stopped again.[1] He looked left and right, and waited for a car and a truck to pass. He then looked both directions again, saw no traffic, and started across the intersection. After Spain had proceeded a short distance into the intersection, the left front fender of his car was struck by McNeal's car.[2] McNeal's vehicle left 32 feet of skid marks before impact, and 18 feet after impact.

Spain testified that he did not see the McNeal car before the impact. He said he had difficulty looking down East Capitol Street to his left because he had to "peep behind" the cars parked along that street. Spain estimated that the distance he could see down East Capitol Street was only "one or two car lengths" from where he was stopped.[3] (Apparently he also showed the jury how far he remembered seeing by pointing to a place on a photograph of the intersection, but no mark was made on the exhibit, leaving a poor record on the question.)

■ Before seeking to cross East Capitol Street, Spain had a duty to look effectively in both directions and to determine that there was no "immediate hazard" in the vicinity of the intersection.[4] If Spain fulfilled that duty, the fact that a collision nonetheless occurred does not necessarily make him contributorily negligent. If his attempts to look down East Capitol Street were inadequate however, and his failure to be properly observant was a proximate cause of the collision, then Spain's recovery would be barred by contributory negligence.

■ Generally, questions of proximate cause and contributory negligence are to be determined by the jury. *See* Singer v.

1. East Capitol Street is 50 feet wide at that intersection. It is a two-way street with four lanes. Parking is permitted in the outside lanes, leaving two wide driving lanes.

2. Police estimated that the point of impact was 16 feet west of the east curb line of 16th Street and 20 feet south of the north curb line of East Capitol Street.

3. The distance between Spain and the nearest parked car on East Capitol Street may have been greater than two car lengths. The police officer who investigated the collision testified that the first legal parking space on East Capitol Street is 40 feet from the corner of 16th Street. He further testified that standard procedure would have been to ticket any obstructing vehicle that was closer than 40 feet, and that no parking ticket was issued in this case.

4. The Highways and Traffic Regulations for the District of Columbia, Part I, § 48, provides, in part:

[E]very driver of a vehicle approaching an intersection at which an official "Stop" sign has been erected shall come to a complete stop and after having stopped yield the right-of-way to any vehicle . . . which is approaching so closely on said highway as to constitute an immediate hazard during the time that such vehicle is moving across or within the intersection . . . .

The term "immediate hazard" has been defined as "a vehicle so close to the intersection that, should it continue with undiminished speed and should the unfavored vehicle start, the two would reach the point where their paths would converge at approximately the same time." Brown v. Clancy, D.C.Mun. App., 43 A.2d 296, 298 (1945).

Doyle, *supra* at 437–38. Intersectional collision cases of the type involved here "nearly always present questions of fact." Holmes v. Stahl, D.C.App., 190 A.2d 102, 103 (1963) (footnote omitted). Only in the exceptional case, where the facts are undisputed and but one reasonable inference may be drawn, may the trial court properly hold that contributory negligence has been established as a matter of law. Singer v. Doyle, *supra* at 438; Carter v. Singleton, D.C.App., 219 A.2d 114, 115 (1966); Phillips v. D. C. Transit System, Inc., D.C.App., 198 A.2d 740, 741 (1964).

■ In an intersectional collision case, a plaintiff may be held to be contributorily negligent as a matter of law if he purportedly looks, but fails to see what the evidence conclusively shows was there to be seen. *See, e. g.,* Singer v. Doyle, *supra*; Sims v. East Washington Railway Co., *supra*; Mitchell v. Allied Cab Co., D.C.Mun. App., 133 A.2d 477 (1957); Brown v. Clancy, D.C.Mun.App., 43 A.2d 296 (1945). However, the cases in this jurisdiction in which contributory negligence has been found as a matter of law in intersectional collisions have one essential characteristic which is missing here. In each, there was no evidence of any obstruction in the line of vision between the vehicles involved.

■■ In order to invoke the principle that a plaintiff should have seen what was there to be seen, it must appear as an uncontroverted fact that the other vehicle was within his range of vision at the time he claims to have looked. Lansburgh & Bros., Inc. v. Binnix, D.C.Mun.App., 42 A. 2d 922, 924 (1945); *see* Dohoney v. Imperial Insurance, Inc., D.C.Mun.App., 87 A. 2d 412, 414–15 (1952). In this case, Spain's view was partially blocked by cars parked lawfully along East Capitol Street. The testimony of Spain and his passenger that Spain stopped at least twice (possibly three times), and looked in both directions before entering the intersection, is not disputed.

After a review of all the evidence, we conclude that reasonable persons could differ as to whether Spain's efforts at observation amounted to the care required of a reasonably prudent driver. The question of Spain's contributory negligence therefore properly was to be determined by the jury, and the trial court erred in granting appellees' motion for a judgment notwithstanding the verdict.[5]

---

5. We comment briefly on the approach taken by the trial judge in concluding that Spain was contributorily negligent as a matter of law. The judge properly stated that in considering the motion for judgment *n. o. v.,* he would "consider only those facts which are not in dispute or which are most favorable to Spain." However, he then utilized the estimates given by the Spains' expert witness, Dr. Samuel J. Raff, as follows:

Assuming the jury accepts Dr. Raff's testimony that McNeal was 125 feet away when Spain started to enter the intersection, and assuming Spain was somewhere between the curb line and about 2 feet past the curb line when he started to cross, and further assuming Spain was accelerating at the rate of 8 feet per second: by the time he had moved about 6 feet, McNeal's car had traveled somewhere between 26 and 35 feet, assuming he was going at 36 miles per hour (53 feet per second) as Dr. Raff said he was. For this purpose, I also accept Dr. Raff's estimate that Spain could see 89.1 feet from 2 feet past the curb line. On these assumptions, McNeal would have been within sight of Spain when he was no more than 5 or 6 feet past the curb line. On this basis, if Spain had been looking and looking effectively, he could and should have seen that McNeal was close enough to constitute an immediate hazard in plenty of time to have avoided the collision.

That analysis does not take into account certain crucial variations which were possible on the evidence presented. The estimate Raff gave for McNeal's speed was stated to be the minimum possible on the facts given. Also, there was conflicting testimony as to whether McNeal was driving close to the cars parked along East Capitol Street, or near the center line. A difference in either McNeal's speed or his distance from the parked cars could have had a determinative effect on Spain's ability to see McNeal in time to avoid being hit by him. Because these essential facts were in dispute, the trial judge could not properly conclude as a matter of law that Spain "could and should have seen McNeal . . . in plenty of time to have avoided the collision."

## II

Appellants also urge us to hold that the trial court committed reversible error by refusing to allow their expert witness, Samuel J. Raff, to estimate the distance Spain supposedly could see to his left along East Capitol Street on the day of the accident. We reject this contention.

▪ The trial court found that Raff was qualified to testify as an accident reconstruction expert after hearing testimony (1) that he was a mechanical engineer, a doctor of physics, and an associate professor of engineering at George Washington University, and (2) that he previously had been employed as an expert in 40 to 50 cases involving accident reconstruction. The court permitted the witness to state his opinion as to McNeal's minimum speed, based upon the physical facts in evidence. The facts on which Raff relied included the length of McNeal's skid marks before and after the collision, the friction coefficient of the pavement, the weight of the vehicles involved, and the distance between the center of gravity of Spain's automobile and the point at which it was struck by the McNeals' vehicle. Admitting the estimate of speed was proper because the undisputed facts in evidence provided a sufficient foundation for such an opinion.[6] *See* Norton v. Gordon Foods, Inc., 458 F.2d 1071, 1073–74 (6th Cir. 1972); Bonner v. Polacari, 350 F.2d 493, 495–96 (10th Cir. 1965); Ross v. Newsome, 289 F.2d 209, 211 (5th Cir. 1961).

▪ The trial court did refuse to admit Raff's estimate of the distance Spain purportedly could have seen along East Capitol Street. The court reasoned that such an estimate was inadmissible because it was based on observations Raff made more than two years after the accident, when the physical conditions at the intersection —such as the size and location of the cars parked along East Capitol Street, and the distance between them—might have been quite different from the conditions which existed when the accident occurred.[7] We conclude that the estimate of distance properly was excluded. *See* Bell v. Myrtle, D.C.Mun.App., 153 A.2d 313, 315–16 (1959); Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 443 (8th Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961). The opinion of an expert "must be grounded on evidentiary facts in the record or reasonable inferences arising therefrom." Logsdon v. Baker, 366 F. Supp. 332, 336 (D.D.C.1973). The factual foundation was insufficient to support an expert opinion as to the distance Spain could have seen.

## III

▪ When the McNeals moved for judgment notwithstanding the verdict, they also moved, in the alternative, for a new trial. When such alternative motions are made, the trial court should rule on both motions, even when a judgment notwithstanding the verdict is entered. *See* Reading v. Faucon, D.C.Mun.App., 134 A.2d 376, 379 (1957); Super.Ct.Civ.R. 50(c)(1). Since that procedure was not followed here, our reversal of the judgment notwithstanding the verdict—with its concomitant reinstatement of the verdicts—leaves the McNeals' motion for a new trial still pending. We therefore remand the case to the trial court for a ruling on the motion for a new trial.

Reversed and remanded.

---

6. The weight to be given to the estimate was, of course, for the jury to determine. *See* Frank's Plastering Co. v. Koenig, 341 F.2d 257, 263 (8th Cir. 1965); *cf.* Wise v. Rothwell, 496 F.2d 384, 391 (3d Cir. 1974); Mueller v. Cities Service Oil Co., 339 F.2d 303, 308 (7th Cir. 1964).

7. It was proffered that Raff had estimated the distance Spain could see by positioning an assistant where he assumed Spain had been sitting while looking down East Capitol Street on the date of the collision. It was explained that the assistant raised his hand each time he first observed a car coming west on East Capitol Street, and that Raff then recorded the car's distance from the intersection at the moment it first was seen.