**Sandra HAIGHT, Personal Representative of the ESTATE OF Bobby M. HAIGHT, Jr., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 99–CV–123.**

District of Columbia Court of Appeals.

Argued Sept. 18, 2001.
Decided Oct. 18, 2001.

Charles C. Parsons, Washington, DC, for appellant.

Donna M. Murasky, Senior Litigation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before FARRELL and REID, Associate Judges, and NEWMAN, Senior Judge.

FARRELL, Associate Judge.

In this suit for negligence, a jury found in the plaintiff-appellant's favor and awarded $1,596,000 to the estate of sixteen-year-old Bobby Haight, who ultimately died after an automobile collision at the intersection of 26th Street and Benning Road, N.E. At the time, the intersection was controlled by a malfunctioning traffic signal light, and the jury found appellee,

the District of Columbia, negligent for failing to maintain the light properly.[1] The trial judge rejected the District's post-verdict challenge to the finding of negligence (the District has not appealed that ruling), but nonetheless granted its motion for judgment n.o.v. on the ground that Haight had been contributorily negligent as a matter of law. Alternatively, the judge granted a new trial on the ground that the jury's rejection of contributory negligence was against the manifest weight of the evidence. The judge did not reach the District's request for a remittitur. In this appeal, the estate challenges both the grant of judgment as a matter of law to the District and the alternative grant of a new trial.

We hold that, on the evidence presented to the jury, the issue whether Haight was contributorily negligent in attempting to proceed through the intersection as he did was for the jury to resolve, so that neither the judgment n.o.v. nor the new trial should have been granted.

## I. The Facts

In reviewing the correctness of a judgment notwithstanding the verdict, we consider the evidence in the light most favorable to the party that prevailed before the jury. *See District of Columbia v. Cooper*, 445 A.2d 652, 655 (D.C.1982) (en banc). So viewed, the evidence was that Bobby Haight was driving an Oldsmobile Cutlass southbound on 26th Street, N.E., at about 5:45 p.m. on October 4, 1993. As he approached the intersection with Benning Road, cars ahead of him in line would stop and then proceed into the intersection, because the traffic light they faced was not working. At the same time, Charles Goodson was driving a red Nissan Stanza westbound on Benning Road, which consists of four lanes in each direction. The traffic light facing him as he approached 26th Street was green. When Haight reached Benning Road and began crossing the intersection, his car was struck by Goodson in the fourth, or inside, lane of Benning Road west. Skid marks showed that Goodson had applied his brakes some seventy feet from the intersection. The collision was with enough force to eject Haight from his car.

The evidence allowed the jury to infer both that Haight had stopped at the (non-functioning) light before entering the intersection, and that he had looked to his left and seen Goodson's car before pulling out.[2] The key factual dispute at trial was over how far Goodson's car had been from the intersection when Haight pulled out. The testimony was more or less consistent that Goodson was traveling 35 to 45 miles per hour before he applied the brakes.[3] But witnesses varied sharply on where his car was when Haight started through the intersection. Alex Stewart, who had stopped his car just ahead of Haight's on 26th Street, testified that he had crossed the intersection and almost completed his left turn onto Benning Road east when he

---

1. The plaintiff had sued other defendants as well, and the District filed cross-claims and a third-party complaint; the disposition of *those matters is not before us.*

2. Since Haight died, of course, he could give no testimony as to whether he had looked. The trial judge, although pointing out that "[t]here is no evidence whether Haight looked left or right before starting up and proceeding into the intersection," nonetheless "assum[ed]

he was looking." Haight's front-seat passenger, Gerald Byrd, had looked to his left and seen Goodson's car, but had not observed whether Haight also did so. From the fact that Haight stopped at the intersection it was reasonable for the jury to infer that he, like Byrd, had looked to his left before starting through it.

3. Goodson himself estimated his speed at about 40 mph at that point.

saw Goodson's car "near" the previous intersection of Benning Road and Oklahoma Avenue, at a distance "shorter than [a] city block." Gerald Byrd, Haight's front-seat passenger, stated that when Haight entered the intersection Goodson's car was fifteen or twenty car lengths down Benning Road, either "before" or "beyond" the intersection with Oklahoma Avenue.[4] Goodson, by contrast, put the distance between himself and Haight at barely a car length when he first saw Haight's car, testimony buttressed by his passenger, Antonio Whitaker, who stated that Goodson was about a car length away when Haight's car started through the intersection. Merika Tapp, who had been driving parallel to Goodson before he pulled ahead of her (she slowed down to turn right onto 26th Street), denied that she was "very close" to the intersection when Haight's car pulled out, but estimated that Goodson's car was two car lengths (or approximately thirty feet) ahead of her when the collision occurred. The jury had before it an aerial photograph of the stretch of Benning Road between 26th Street and Oklahoma Avenue, and on a map used as demonstrative evidence (but not drawn to scale) the witnesses variously marked the locations of the vehicles just before the accident.

## II. The Judgment N.O.V.

In setting aside the verdict and holding Haight to have been contributorily negligent as a matter of law, the trial judge explained that "it is clear [from the evidence] that Goodson was less than two car lengths and no more than a second from the intersection when Haight pulled out." At oral argument on appeal, the District candidly admitted the factual problem with this conclusion.[5] Testimony by Stewart and Byrd, if believed, allowed the jury to infer that Goodson's car was closer to 300 feet and as much as five seconds (if traveling at 40 mph) from the intersection when Haight pulled out. Byrd placed Goodson fifteen or twenty car lengths from the intersection at that point (a car length could be measured at fifteen feet, as the judge stated to the jury), and Stewart put Goodson's car near the intersection of Oklahoma Avenue *after* Stewart had crossed Benning Road west and almost completed his left turn—a reasonable inference being that Haight, just behind him in line, had begun crossing the intersection by then. Although some testimony placed Goodson much closer to the intersection when Haight started up, the evidence of distance was not nearly as unequivocal as the trial judge described it.

Our standard of review of the judge's ruling "is whether, on the best view of plaintiff's evidence, fair and reasonable [jurors] would be compelled to conclude ... that [Bobby Haight] was contributorily negligent," *Rawlings v. Robbins*, 257 A.2d 486, 488 (D.C.1969), keeping in mind that the District had the burden of proof on that issue. *Singer v. Doyle*, 236 A.2d 436, 438 (D.C.1967). In an intersectional collision case, a plaintiff is contributorily negligent as a matter of law if he failed to look or "purportedly look[ed], but fail[ed] to see what the evidence conclu-

---

**4.** "Q. When you were in the car, and Bobby Haight proceeded out into the intersection, I think you've indicated that there was a red car and you thought it was beyond Oklahoma Avenue, is that correct?

A. Yes."

**5.** In its post-verdict motion for judgment n.o.v., the District had urged upon the judge the conclusion that, according to the *"undisputed* evidence" (emphasis by the District), Haight "pulled out in front of ... Goodson's vehicle when [it] was approximately one car length (or one half of a car length) from the intersection."

sively shows was there to be seen." *Spain v. McNeal,* 337 A.2d 507, 510 (D.C.1975). "[I]t is elementary that a person operating a car who arrives at an intersection controlled by a stop signal must not only look before entering the [intersection], but also observe moving traffic and give the right-of-way to an approaching vehicle which would constitute an immediate hazard." *Mitchell v. Allied Cab Co.,* 133 A.2d 477, 479 (D.C.1957). "[T]he failure to look effectively when driving an automobile and to observe another vehicle ... which constitutes [an immediate] hazard and is clearly there to be seen is negligence as a matter of law." *Frager v. Pecot,* 327 A.2d 306, 307 (D.C.1974). The fact, however, " 'that [a driver] was struck before clearing the intersection does not establish his negligence as a matter of law.' " *Carter v. Singleton,* 219 A.2d 114, 115 (D.C.1966); *see Rawlings,* 257 A.2d at 488 (quoting *Carter,* 219 A.2d at 115). The duty to "look observantly and with effect" means that a driver must "look in such an intelligent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution ... could have seen[ ] under like circumstances." *Brown v. Clancy,* 43 A.2d 296, 298 (D.C.1945) (citation and internal quotation marks omitted). And unless it is undisputed that he did not look or unless "he purportedly look[ed], but fail[ed] to see what the evidence *conclusively* shows was there to be seen," *McNeal,* 337 A.2d at 510 (emphasis added), contributorily negligence is an issue for the jury.

▉▉▉▉ Haight, of course, had no license to attempt to "beat" Goodson

through the intersection. *Carter,* 219 A.2d at 115. Also, the fact that he was entering Benning Road, a busy thoroughfare with four lanes in each direction, is relevant to the care he was required to exercise in the circumstances.[6] Even so, as we have seen, the evidence allowed the jury reasonably to find that Haight stopped at the intersection, looked and saw Goodson's car, and judged that it was as much as 300 feet (or five seconds) away when he pulled into the intersection. Our decisions hold that whether in these circumstances he should have recognized Goodson's car as an "immediate hazard"[7] and let it pass by before attempting to cross was for the jury to decide. In *Carter v. Singleton,* for example, the plaintiff (who survived the accident) testified that he had seen the other car "about two short blocks away" and "noticed nothing unusual about its speed" before starting through the intersection. 219 A.2d at 115. The other driver, by contrast, insisted that he was only forty or fifty feet from the intersection when the plaintiff's car " 'jump[ed]' out in front of him." *Id.* The court, in reversing a determination of contributory negligence as a matter of law, stated:

> [T]his was a typical intersectional collision, with contradicting evidence as to speeds and distances. [It] was not a case of appellant failing to stop and look, or looking and failing to see what should have been seen, or deliberately attempting to "beat" the other vehicle to the crossing. Appellant stopped and looked. He saw the other vehicle approaching at a distance and speed which he thought

---

**6.** This is so whether or not, as the driver entering from the right, he had the technical "right of way." *See, e.g., Holmes v. Stahl,* 190 A.2d 102, 103 (D.C.1963) ("[O]ne having the right-of-way is still required to use reasonable care when entering an intersection.").

**7.** "By [an immediate hazard], we think, was intended a vehicle so close to the intersection that, should it continue with undiminished speed and should the [other] vehicle start, the two would reach the point where their paths would converge at approximately the same time." *Brown,* 43 A.2d at 298.

made it safe for him to cross. The fact that he was struck before clearing the intersection does not establish his negligence as a matter of law. He made a decision which motorists at intersections are required to make daily. Whether his decision was negligently or carelessly made was a question for the jury. 219 A.2d at 115 (footnotes omitted). In *Gober v. Yellow Cab Co. of D.C., Inc.,* 173 A.2d 915, 915 (D.C.1961), we likewise held that the driver-plaintiff's contributory negligence should have been determined by the jury where the collision occurred after the driver stopped at a stop sign, looked and saw the approaching car, and pulled out when he thought he could safely cross the intersection. We reached the same result in *Rawlings v. Robbins,* where the plaintiff testified that he had crossed five of six lanes of the intersection and perceived the sixth lane to be clear of oncoming traffic for 75 to 90 feet, but he was struck by a car which the jury could have found was driving at an unreasonable rate of speed. 257 A.2d at 487, 488. In reversing a grant of judgment n.o.v., we held that *Carter* was "dispositive of this case." *Id.* at 488; *see also Holmes, supra* note 6, 190 A.2d at 103.

By contrast, the cases where the court has found contributory negligence as a matter of law—and on which the District relies—have nearly all involved a plaintiff who asserted he had not seen the other vehicle before the collision when the vehicle was indisputably "there to be seen." In *D.C. Transit Sys. v. Harris,* 284 A.2d 277 (D.C.1971), for example, the plaintiff acknowledged that he had not seen the bus until the moment of impact even though his vision was concededly unimpaired "for the entire block north of the intersection." *Id.* at 279. In *Mitchell v. Allied Cab,* although "[t]here was no evidence that [the plaintiff's] view of the street to her left was obstructed[,] .... she and her passenger

said they looked and saw no vehicle, yet [they] traveled a very short distance and were struck." 133 A.2d at 479. In *Brown v. Clancy,* the plaintiff testified that from where he had stopped he could see to his right "a distance of approximately 250 feet" and when "he was in the intersection he saw the truck 25 or 30 feet away," yet he "[had] not see[n] it when he looked before starting." 43 A.2d at 298. So too in *Singer v. Doyle,* the plaintiff "insisted that she never saw appellant's automobile prior to the impact" even though "the accident occurred mid-afternoon on a clear day, ... traffic was light and there were no visual obstructions of the roadway." 236 A.2d at 437. And in *Frager v. Pecot,* the plaintiff likewise asserted that "he never saw defendant's automobile at any time before the collision" (the defendant was attempting a left turn from the opposite direction) even though "no one was in front of him" and "he could see traffic lights further ahead on his side of [the] street." 327 A.2d at 307.

Our decisions, in short, do not permit a conclusion that Haight was negligent as a matter of law in judging—in retrospect, misjudging—the zone of safety he had in deciding to cross through the intersection ahead of Goodson's car. On the evidence and inferences fairly drawn from it, the jury fairly could determine that he exercised reasonable care when he looked and saw Goodson's car, and decided that it was far enough away and moving at a speed moderate enough to allow him to cross safely ahead of it. That he mistook the actual distance or Goodson's actual speed, as the jury implicitly found, is not the issue; the happening of the accident alone is not negligence. *Carter,* 219 A.2d at 115. Given the jury's prerogative to resolve "contradicting evidence as to speeds and distances," *id.,* it could fairly conclude that Haight acted with reason-

able caution and that the District had not proven contributory negligence.

### III. New Trial

The trial judge alternatively granted the District's motion for a new trial on the ground that the verdict rejecting contributory negligence was against the weight of the evidence. In doing so the judge explained simply: "Given the Court's finding that Bobby Haight was contributorily negligent as a matter of law, it follows that the overwhelming weight of evidence is contrary to the jury's verdict."

▮▮▮▮▮▮ The trial court may grant a new trial "on the ground that the verdict was contrary to the clear weight of the evidence," *Washington v. A & H Garcias Trash Hauling Co.*, 584 A.2d 544, 545 (D.C.1990). We have stressed that the imbalance between verdict and evidence must be "clear." *Lyons v. Barrazotto*, 667 A.2d 314, 324 (D.C.1995). In making its decision, the trial court may evaluate the credibility of witnesses "and is not required to view the evidence in a light most favorable to the non-moving party." *Rich v. District of Columbia*, 410 A.2d 528, 535 (D.C.1979); *see Washington*, 584 A.2d at 545. But the court does not simply replicate the jury's task: it may not "set the [jury] verdict aside as against the weight of the evidence merely because, if [it] had

acted as the trier of fact, [it] would have reached a different result." *Lyons*, 667 A.2d at 325 (citation omitted).

▮▮▮▮▮▮ "Our review of a grant of a new trial is limited to whether the trial court abused its discretion." *Washington*, 584 A.2d at 545; *see Rich*, 410 A.2d at 535.[8] The exercise of discretion, however, must "be based upon and drawn from a firm factual foundation." *Johnson v. United States*, 398 A.2d 354, 364 (D.C.1979). The trial judge set aside the verdict here based on his view that "it is clear [from the evidence] that Goodson was less than two car lengths and no more than a second from the intersection when Haight pulled out." That conclusion, we have seen, took into account only part of the testimony the jury had before it. Alex Stewart, in particular, was a disinterested eyewitness—whose credibility the judge did not question—who saw Goodson's car near the previous intersection *after* Stewart had turned onto Benning Road and, by legitimate inference, Haight had already entered the intersection behind him. Gerald Byrd similarly placed Goodson fifteen or twenty car lengths down Benning Road when Haight pulled out; and although Byrd could plausibly be said to have had a bias favoring his companion Haight, a similar claim of partiality could be made of Goodson and his passenger Whitaker, who

**8.** Beginning with *Rich*, this court has applied "a greater degree of scrutiny [than normally appropriate to the review of discretionary decisions] where the trial court grants a new trial on the basis that the jury's verdict is against the clear weight of the evidence," *Durphy v. Kaiser Found. Health Plan*, 698 A.2d 459, 468 (D.C.1997) (citations omitted), a precaution we have deemed necessary in part " 'to protect the litigants' [Seventh Amendment] right to jury trial.' " *Rich*, 410 A.2d at 536 (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir.1960)). The District in its brief strongly urges us to reject that standard of "close scrutiny" in light of

the Supreme Court's later analysis of the Seventh Amendment in *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). (It is not clear whether the District believes a division of the court can disregard past precedent in light of *Gasperini* or is merely preserving a potential en banc issue.) We have no occasion to consider here the relevance of *Gasperini*—which the District admits to be "a complex decision"—to the standard of review this court applies to new trial motions, because, as explained in the text, under the ordinary standard of review for abuse of discretion we cannot sustain the trial court's decision.

placed the vehicles much closer together and on whose testimony the judge chiefly relied.[9]

Viewed in its entirety, the evidence did not "clear[ly]" support the factual conclusion the judge drew from it, and for the same reason the jury's rejection of contributory negligence was not against the *clear* weight of the evidence. The trial judge abused his discretion in granting the new trial.

## IV.

The judgment of the Superior Court is reversed and the case is remanded for consideration of the District's request for a remittitur.

*So ordered.*

---

**9.** The judge also apparently credited the testimony of Merika Tapp, another neutral eyewitness, that "she was less than two car lengths from the intersection when Haight pulled out." But Tapp's recollection was actually muddled as to her location at that time or whether she had even seen Haight's car before the collision. *See, e.g.,* App. 167 ("It's hard to say exactly where any car was when I [saw Haight's] car, because I[saw] that car when the collision occurred, basically. I didn't see it coming from the street, 26th, or anything of that nature[;] I[saw] the collision").