Haywood **THORNE**, Appellant,

v.

**U–HAUL OF METRO D.C., INC.,** Appellee.

No. 88–516.

District of Columbia Court of Appeals.

Argued June 15, 1989.

Decided Oct. 5, 1990.

---

Thomas A. Gentile, with whom Harry W. Goldberg, Chevy Chase, Md., was on the brief, for appellant.

Victor I. Weiner, Washington, D.C., for appellee.

Before BELSON and STEADMAN, Associate Judges, and REILLY, Senior Judge.

REILLY, Senior Judge:

After obtaining a jury verdict for damages in the amount of $6,000 for personal injuries incurred in an automobile accident, appellant urges this court to set aside the judgment and grant a new trial on the ground that such award was patently inadequate. Pointing out that the recovery allowed fell far short of compensating him for his medical expenses, appellant argues that the verdict reached by the jury was shaped by an erroneous ruling admitting testimony which should have been excluded. A review of the record as a whole, however, reveals ample evidence to support the jury's verdict and compels us to conclude that the challenged ruling amounted to no more than harmless error. Accordingly, we let the judgment stand.

Briefly summarized the record shows that the accident occurred one April night in 1982, when a U–Haul truck, leased to and driven by Jerry Arrington, struck the rear of a car belonging to and driven by appellant, which was standing at an intersection awaiting a change in traffic lights. Appellant, a retired warehouse worker, then about sixty-five years of age, had his hands on the steering wheel when this happened. Although stunned and painfully jolted, he was able to drive the damaged car home after police had come on the scene and interviewed him and Arrington.[1] In appellant's subsequent action against two U–Haul firms and Arrington the court directed a verdict in his favor on the issue of negligence. All that the jury was called upon to determine was the ownership of the leased truck and the amount of damages to which appellant was entitled for such injuries as were properly attributable to the accident. The jury returned a verdict against both Arrington and U–Haul of Metro D.C., Inc.

According to appellant, the impact of the collision was the cause of injury not only to his spine and neck, but also to his wrists, resulting in a permanent impairment of the use of one hand which disabled him from pursuing his customary occupation—a platform loader at different warehouses. He sought to recover damages for disability and future medical treatment, pain and suffering, and also compensation aggregating more than $15,000 for surgical, hospital, and other medical expenses.[2]

The bulk of the special damages consisted of two hospital bills incurred by appellant when he twice had to undergo wrist surgery, totalling $5,818.06, and a bill for $8,315.00 from Dr. Rida Azer, a specialist

---

1. Appellant testified that his car was so severely wrecked that it was no longer operable. Any claim for property damage was apparently settled out of court, as appellant's action against U–Haul and Arrington sought recovery only for physical injuries.

2. Special damages claimed included

| | |
|---|---|
| Rida Azer, M.D. | $ 8,315.00 |
| Hadley Memorial Hospital in 1/85 | 2,214.00 |
| Hadley Memorial Hospital in 4/86 | $3,604.86 |
| Washington Hospital Center | 152.65 |
| Transportation | 350.00 |
| Medicine | 200.00 |
| Physical Therapy | 450.00 |
| TOTAL | $15,286.51 |

Appellant also requested compensation for anticipated medical expenses and occupational disability.

in orthopedic surgery who treated appellant for all of his injuries, and performed both operations. In his testimony, plaintiff (appellant here) conceded that he did not seek any medical assistance until a month after the accident when he visited the emergency room of Washington Hospital Center to complain of stiffness and soreness in the back and neck. The records of the Center disclosed that he was suffering from back strain, for which pain killing pills were prescribed, but that nothing was said about any wrist injuries. In fact, appellant, after consulting a doctor of his own and receiving further back treatment, did not mention any trouble with his wrists until more than a year after the accident.

Thus, at trial, the defense took the position that the wrist condition which culminated in surgery and a disabled left hand, had nothing to do with the accident, but could be attributed to a preexisting affliction, rheumatoid arthritis, which over the years took an increasing toll. On this issue, there was conflicting opinion testimony by medical witnesses.

Dr. Azer, who qualified as an expert in orthopedic surgery and neurosurgery, told the jury that appellant first visited him on January 26, 1983, eight months after the accident, complaining of spine and neck pain. Through clinical examinations Dr. Azer monitored appellant's problems as they developed. Appellant first complained of minor wrist pain in the spring of 1983. Dr. Azer testified that he detected "carpal tunnel syndrome"[3] at that time and he informed appellant that the condition would likely worsen and eventually require surgery. Eventually in 1985 and 1986, Dr. Azer did operate on appellant's wrists. Dr. Azer also detected preexisting rheumatoid arthritis in appellant's wrists. Although he recognized that rheumatoid arthritis could

have caused appellant's wrist condition, Dr. Azer concluded that it was the collision which caused or aggravated appellant's carpal tunnel syndrome.

Appellant was also examined at the request of the defense by two medical specialists, Dr. Easton Manderson, an orthopedic surgeon, and Dr. Harold Stevens, a neurologist. Only one of them was called as a witness at trial, *viz.*, Dr. Stevens, who qualified as an expert in the field of neurology and neurosurgery. His testimony dealt extensively with the issue of whether the carpal tunnel syndrome was causally related to the collision. He was of the firm opinion that the accident was not a contributing factor to carpal tunnel syndrome, but that this particular disease had occurred "spontaneously," *i.e.*, without any apparent cause or precipitation. In reaching his opinion, Dr. Stevens noted that appellant did not complain of or manifest any wrist injury in the emergency room visit soon after his accident. Had the collision caused any damage to the wrist nerve tunnel, the witness stressed that pain would have been immediate, accompanied by such signs as bruising, swelling, laceration, or discoloration. In fact, appellant did not complain of wrist problems until a year later.

Dr. Stevens also noted that appellant had rheumatoid arthritis in his wrists. He pointed out that such arthritis is a competent producing cause of carpal tunnel syndrome.[4]

Before explaining the reasons for his opinion, Dr. Stevens had been asked if he had read any other medical reports before he made his own physical examination of appellant. He replied that he had read the reports from Washington Hospital Center, Dr. Azer, and his colleague Dr. Chui, and Dr. Manderson. No objection was raised

---

**3.** The carpal tunnel is a canal in the wrist which houses both tendons and nerves. Carpal tunnel syndrome occurs when the tendons in the tunnel become inflamed and expand, thus exerting pressure on the nerves. As the nerve gets pressed, its function becomes weakened and the wrist and hand mobility are impaired. Neither side disputed that such a condition may be a symptom of rheumatoid arthritis.

**4.** Both parties had learned through pretrial discovery that in connection with a claim stemming from a bus accident which had occurred two or three years before the U–Haul collision, appellant had been diagnosed as suffering from rheumatoid arthritis. Dr. Stevens, who had been consulted with respect to the matter, was aware of this diagnosis. Neither side disputed that this arthritic condition existed long before the accident, giving rise to the instant case.

when the witness made references to the first three of those reports. Defense counsel then inquired about the Manderson report, and the following questions and answer drew an immediate objection which was overruled.

[APPELLEE'S COUNSEL]: Now, I believe you also mentioned you had reviewed some records of ... Dr. Manderson, is that correct?

[DR. STEVENS]: Yes.

Q. And what did [those] records reveal?

A. He concluded that the x-ray changes were not inconsistent with the patient's age; and he, Dr. Manderson, did not believe that these findings were secondary to the trauma in 1982.

■ On appeal, we are urged to hold the overruling of this objection reversible error requiring a new trial. Appellant argues that the court's ruling deprived him of his right to cross-examine Dr. Manderson, and by permitting the foregoing answer to remain in the record, the court made hearsay testimony available to the jury for its consideration in reaching its opinion on the issue of causal relationship *with respect to the claimed neck and back injuries.* (Emphasis supplied.) Asserting that this testimony was fatally prejudicial to appellant's cause, counsel cites *Rotan v. Egan,* 537 A.2d 563 (D.C.1988)—an opinion which had not been released at the time the trial court here was called upon to make a ruling.

The issue of the admissibility of hospital or medical reports containing observations of a professional surgeon or diagnostician who is not present to testify is a troublesome one. Courts of this jurisdiction have long been guided by two decisions of the United States Court of Appeals for this Circuit, when that tribunal was the highest court in the District, *viz., New York Life Ins. Co. v. Taylor,* 79 U.S.App.D.C. 66, 147 F.2d 297 (1945), and *Washington Coca–Cola Bottling Works, Inc. v. Tawney,* 98 U.S.App.D.C. 151, 233 F.2d 353 (1956). In *New York Life,* the court held that hospital records containing opinions based on observations in a field where even experts disagree were inadmissible. In contrast, *Washington Coca–Cola* held that medical records containing observations of a physician of physical facts plain to the trained eye should be received. Sometimes this distinction is not an easy one for trial judges to make. *See Group Hospitalization, Inc. v. Westley,* 350 A.2d 745, 747 (D.C.1976); *Adkins v. Morton,* 494 A.2d 652, 658–60 (D.C.1985).

Very recently in *Rotan v. Egan, supra,* we were called upon to do so in a case where the trial court received into evidence outpatient records containing an opinion by a doctor not presented by a witness. We distinguished between simple, routine observations about which competent expert witnesses would not be likely to disagree, and conjectural and complex diagnoses. *Rotan, supra,* 537 A.2d at 566–67. We pointed out that admissibility turns on whether the statement at issue involved a "difficult diagnostic judgment of great complexity." *Id.* at 567. The purpose behind this distinction was that "the right to cross-examination would be destroyed if the untested, very subjective observations of persons whose credibility was not before the jury were accepted. *Id.* at 566.

In the application of *Rotan, supra,* we turn to the conclusions of Dr. Manderson, quoted or summarized by Dr. Stevens. These consisted of two statements, (1) that "the x-ray changes were not inconsistent with the patient's age," and (2) that he "did not believe that these findings were secondary to the trauma in 1982." Because of its general and non-conclusory nature it is not obvious that Dr. Manderson's first observation should have been excluded. The second statement, however, does appear to be the product of a complex and conjectural diagnosis, and although couched rather ambiguously, dealt with the key issue: whether the accident caused appellant's injuries. For this reason, admission of such testimony was error.

■ Had the admitted excerpts from the Manderson opinion been directed at all of the injuries appellant attributed to the accident, we would be inclined to deem this error prejudicial. But in the context of Dr. Stevens' direct testimony and cross-examination, the jury was reminded that the

Manderson report was concerned only with the neck and back injuries, or as appellant's counsel phrased it, the "cervical lumbar spine." On cross-examination, Dr. Stevens expressly disclaimed that he had testified "with regard to the causality or with respect to the question of permanency of the neck or back injury."

The injury to the neck and spine constituted only a minor part of the total damages claimed. The bulk of the surgery and hospital expenses, as well as the occupational hand disability were the result of the carpal tunnel syndrome. It was apparent from the verdict that the jury accepted Dr. Stevens' view that this syndrome was not caused by the accident, but was awarding damages for the consequences of the neck and spinal injuries. Hence, the admission of testimony referring to Dr. Manderson's report was harmless error.

*Affirmed.*